# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

No. 17-3088

September Term, 2019

FILED ON: SEPTEMBER 18, 2020

UNITED STATES OF AMERICA,
> APPELLEE

v.

JULIAN ZAPATA ESPINOZA, ALSO KNOWN AS PIOLIN,
> APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:11-cr-00111)

Before: SRINIVASAN, Chief Judge, and ROGERS and PILLARD, *Circuit Judges*.

## J U D G M E N T

The court considered this appeal on the record from the United States District Court for the District of Columbia, and the briefs and arguments of the parties. The panel has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). It is hereby

**ORDERED AND ADJUDGED** that the judgment of the district court be **AFFIRMED**.

Julian Zapata Espinoza, represented by counsel, pled guilty to one count of first-degree murder of an officer or employee of the United States, in violation of 18 U.S.C. §§ 1114 and 1111, and one count of attempted murder of another officer or employee of the United States, in violation of 18 U.S.C. §§ 1114 and 1113. On the first-degree murder count, Zapata Espinoza faced a statutory minimum sentence of imprisonment for life, 18 U.S.C. § 1111(b), and the parties agreed that the appropriate Guideline is also imprisonment for life. Where a defendant renders substantial assistance to the government in the investigation or prosecution of another person who has committed an offense, section 3553(e) of Title 18 of the United States Code and section 5K1.1 of the United States Sentencing Guidelines authorize the court to grant a downward departure from a statutory mandatory minimum sentence upon the government's motion. Confronting a life sentence, Zapata Espinoza chose to enter a plea agreement and cooperate with the government. Zapata Espinoza's plea agreement contained a provision waiving his right to appeal his future "sentence or the manner in which it was determined," except to the extent that the sentence

exceeded the statutory maximum or departed upward from the applicable Guidelines range.

Zapata Espinoza did in fact render substantial assistance to the government, which accordingly filed a motion for downward departure from the Guidelines range. The government asked the district court to impose a sentence of thirty-five years in prison for the first-degree murder conviction, to run concurrently with Zapata Espinoza's twenty-year sentence for attempted murder. Zapata Espinoza's own sentencing memorandum requested a sentence of twenty-five years. Adopting the government's recommendation, the district court sentenced Zapata Espinoza to thirty-five years in prison. Zapata Espinoza does not claim—nor could he—that his sentence falls outside the appeal waiver as in excess of the statutory maximum or Guidelines range. He objects only to the court's failure to explain why he received a longer sentence than did some of his codefendants.

We will generally enforce a "knowing, intelligent, and voluntary" waiver of the right to appeal. *United States v. Adams*, 780 F.3d 1182, 1183 (D.C. Cir. 2015) (citing *United States v. Guillen*, 561 F.3d 527, 529 (D.C. Cir. 2009)). Zapata Espinoza frames his appeal of his below-Guidelines sentence in terms of procedural unreasonableness. Although his arguments against the appeal waiver are not entirely clear, he appears to argue either that he reasonably believed that the waiver does not apply so cannot be held to have knowingly waived his appeal right here, or that the district court's procedural error was sufficiently fundamental as to be appealable notwithstanding an otherwise applicable waiver.

Zapata Espinoza contends that he did not knowingly and willingly waive his right to appeal a legally inadequate explanation because the plea agreement's introductory statement assured him that he would be sentenced according to 18 U.S.C. § 3553(a) and (c) through (f). The language in the plea agreement on which Zapata Espinoza relies restates the district court's responsibility to follow statutorily prescribed procedures, but, contrary to Zapata Espinoza's contention, that text does not constrict the scope of the appeal waiver. The appeal waiver paragraph itself stated that Zapata Espinoza waived the right to appeal not only "the sentence" but also "the manner in which it was determined," and retained appeal rights only if (1) the sentence exceeded the statutory maximum, or (2) the sentence departed upward from the Guidelines range—which it concededly did not. We have recognized the very language used in Zapata Espinoza's appeal waiver as waiving both procedural and substantive claims on appeal. *See Adams*, 780 F.3d at 1184.

To the extent that Zapata Espinoza's argument has a second strand—that, even if the appeal waiver applies, the district court's procedural error was sufficiently serious to void the waiver—it fails because we see no error of the requisite gravity. To be sure, we will not enforce an appeal waiver at all costs. An otherwise valid appeal waiver does not bar a claim of ineffective assistance of counsel in connection with agreeing to the waiver, nor will we enforce it "if the sentencing court's failure in some material way to follow a prescribed sentencing procedure results in a miscarriage of justice." *Adams*, 780 F.3d. at 1183-84 (quoting *Guillen*, 561 F.3d at 531). For example, an "utter[] fail[ure] to advert to the factors in 18 U.S.C. § 3553(a)" will void the appeal waiver's bar against reviewing that failure. *Guillen*, 561 F.3d at 531. Likewise, a defendant retains the "right to appeal a sentence that is unlawful because it exceeds the statutory maximum" or

2

because it "rest[s] upon a constitutionally impermissible factor, such as the defendant's race or religion." *Id.*

Zapata Espinoza, however, does not specifically contend that the sentencing process in this case amounted to a miscarriage of justice. Nor does our own review of the record in its entirety reveal any error committed here that amounts to a miscarriage of justice requiring nonenforcement of the appeal waiver. We note as a matter of general context that Zapata Espinoza's sentence was a substantial downward departure from a mandatory life sentence. Zapata Espinoza was ably represented by experienced counsel. Counsel reviewed with him the plea agreement and the sentence he could face. Zapata Espinoza and counsel both initialed each page of the plea agreement, including the appeal waiver. And Zapata Espinoza confirmed in open court that he understood the agreement and had no questions.

The district court largely failed to identify its own reasoning for Zapata Espinoza's sentence. Nonetheless, the court did explain in open court why it "accept[ed]" the justification the government spelled out for the sentence, which the court believed appropriately balanced appreciation of Zapata Espinoza's investigation assistance against the gravity of his misdeeds, including the harm to victims and their families. J.A. 131-32. There is no question that a thirty-five-year sentence is long, but the acknowledged crime was also indisputably heinous. Under the law and in the context of sentences imposed on other defendants for similar crimes, the sentence is not "fundamentally unfair." *United States v. Buissereth*, 638 F.3d 114, 118 (2d Cir. 2011) (quoting *United States v. Gomez-Perez*, 215 F.3d 315, 320 (2d Cir. 2000)).

Zapata Espinoza's sole objection was the court's failure to explain why certain codefendants received lower sentences and even greater downward departures from the statutory and Guideline minimum of life in prison than he did. But, in its sentencing memorandum and during allocution at the defendants' sentencing, the government provided detailed justifications for each recommended sentence. *See* J.A. 48-64, 94-96, 102-105, 109-112. Although the court had an obligation to explain its own thinking, where the court said it accepted the government's recommendations and the government explained its grounds for each individual recommendation, we see no miscarriage of justice.

Defendants who did not plead guilty or cooperate with the government's investigation and prosecution were sentenced to life in prison. 11/6/2017 Minute Order, *United States v. Garcia Soto*, No. 13-cr-142 (D.D.C); 11/6/2017 Minute Order, *United States v. Quezada Piña*, No. 13-cr-143 (D.D.C.). As to each of the defendants who pleaded guilty and agreed to cooperate, the government's recommendation accounted for the nature of their participation with the trafficking organization, their role in the attack that resulted in one victim's death and the other's grievous injury, and differences in the extent and usefulness of their cooperation.

The government recommended a sentence of thirty-five years for Zapata Espinoza, explaining that he was a leader in the criminal organization and that he personally instigated the deadly attack in order to steal an armored car for use by defendants' cartel, thus bearing "greater responsibility" for the carnage. J.A. 94. The government recommended that Zapata Espinoza serve thirty-five years rather than the statutory minimum of life imprisonment because, in the

3

words of the court and confirmed by the government, he served as a "very credible witness" at trial and enabled the extradition of other suspects, including an individual the government believed to have fired the weapon that killed and injured the agents. J.A. 94-96. The government recommended thirty-four years in prison for another defendant who was not a leader or instigator as Zapata Espinoza was, but had fired directly at the victims in the attack in question, was initially "highly cooperative," yet was not called as a witness at trial because he also provided untruthful statements. J.A. 102-105. It recommended twenty-eight years for a defendant who had recently affiliated with the traffickers, enabled the shootings by opening the door to the victims' vehicle, but was not among the assailants who shot the victims, and proved to be a truthful and valuable cooperator for the government. J.A. 109-112. Zapata Espinoza did not dispute the factual underpinnings of the government's recommendations, and in fact thanked the government for providing a sentencing "memorandum that was very complete" and that "fully credited [Zapata Espinoza] for his cooperation." J.A. 98.

The district court's own statements focused on why it accepted the government's recommendations rather than imposing the statutory minimum life sentence; as to the specific degrees of leniency, the record shows that the court simply "accept[ed]" the government's explanations without objection from Zapata Espinoza. J.A. 131-32. Again, in view of all the circumstances, we cannot conclude that enforcement of the appeal waiver amounts to a miscarriage of justice.

We pause to emphasize that, appeal waiver or no, district courts remain obligated to sentence in accord with 18 U.S.C. § 3553(a) and (c) and other applicable law. Appeal waivers are designed in part to minimize systemic burdens and delays of unnecessary appeals, not to render substantive or procedural law inapplicable to the underlying plea bargaining and sentencing. *See United States v. Woltmann*, 610 F.3d 37, 42-43 (2d Cir. 2010) (vacating sentence and remanding for re-sentencing before a different district judge where sentencing judge conflated appeal waiver with inapplicability of law governing sentencing). Even when appeal is waived, deficiencies in a district judge's explanations of a criminal sentence are problematic. The law requires courts to explain the sentences they impose. Explanations of the reasons for a given sentence communicate to the public the gravity with which the law and the court—on behalf of the people and with appreciation of the victims' suffering—view the crimes. In explaining the sentence, the judge also speaks directly to the convicted person on whom he imposes consequences, and he does so for perhaps the last time. What the court says at sentencing may affect the propriety of the sentence in the defendant's eyes—in this case, a man who will spend most or all of the rest of his life behind bars. Oral and written sentencing explanations also aid the reviewing court which, as this case illustrates, may have some work to do even in the face of an appeal waiver. It is essential that, along with the key task of deciding and imposing a sentence, the court take the time to spell out its reasoning both orally in open court and in a written statement of reasons in compliance with applicable law.

\* \* \*

In his reply brief, Zapata Espinoza also contends that the appeal waiver is unenforceable because the district court failed during the plea colloquy to inform him of and confirm he

4

understood the terms of the waiver, in violation of Federal Rule of Criminal Procedure 11(b)(1)(N).

Zapata Espinoza did not object in the district court to the judge's failure to follow the requirements of Rule 11 by orally explaining in the plea colloquy the nature and consequences of the appeal waiver. To assure that the choice to waive the appeal right is drawn to the attention of the defendant, Rule 11(b)(1)(N) specifically requires that, before a district judge accepts a plea, the judge must discuss with the defendant the terms of any appeal waiver and determine that the defendant understands them. "[W]e have instructed that 'courts conducting plea colloquies must scrupulously adhere to the obligations of Rule 11.'" *United States v. Brown*, 892 F.3d 385, 395 (D.C. Cir. 2018) (quoting *United States v. Shemirani*, 802 F.3d 1, 3 (D.C. Cir. 2015)). Indeed, reflecting the importance we place on adherence to Rule 11, we have also cautioned that "the United States Attorney's Office would be well advised to develop instructions and training for its attorneys to make it part of their routine practice to help ensure that district courts fulfill each of the requirements of Rule 11, including Rule 11(b)(1)(N)." *Shemirani*, 802 F.3d at 3. We renew that caution here.

There is no dispute the district court failed to "discuss the appeal waiver with [Zapata Espinoza] during his plea colloquy as required by [Rule] 11(b)(1)(N)." Appellee Br. 18. That failure was error. *See United States v. Lee*, 888 F.3d 503, 506 (D.C. Cir. 2018). When accompanied by a showing of potential prejudice, such error may render the appeal waiver unenforceable. *See United States v. Vonn*, 535 U.S. 55, 58-59 (2002); *Brown*, 892 F.3d at 397; *Shemirani*, 802 F.3d at 3. "[T]o obtain relief for an unpreserved Rule 11 failing," a defendant "must show a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 76, 83 (2004). "[I]n assessing the effect of a Rule 11 error, a reviewing court must look to the entire record[.]" *Id.* at 80.

The district court's failure to comply with Rule 11(b)(1)(N) does not vitiate the appeal waiver here because Zapata Espinoza has not identified any prejudice flowing from that failure, nor has he even suggested that, had he known he was giving up his right to appeal procedural sentencing error, he would not have pled guilty.

\* \* \*

In sum, any section 3553(c) error on the facts of this case would not fall beyond the scope of the appeal waiver, nor has Zapata Espinoza shown that the district court committed procedural error that was sufficiently grave as to vitiate the waiver. Zapata Espinoza also has identified no prejudice resulting from his unpreserved challenge to the district court's Rule 11(b)(1)(N) error. We hold that the unpreserved Rule 11(b)(1)(N) error is not prejudicial plain error that renders the waiver unenforceable.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or petition for rehearing *en banc*. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41.

**Per Curiam**

                      **FOR THE COURT:**
                      Mark J. Langer, Clerk

BY:    /s/
        Daniel J. Reidy
        Deputy Clerk